UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ARLENE BERKOWITZ on behalf of herself and
all other similarly situated consumers

                Plaintiff,

    -against-

FREDERICK J. HANNA & ASSOCIATES, P.C.

                Defendant.

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAY 17 2012 ★

BROOKLYN OFFICE

CV 12 - 2503

GLASSER, J.  AZRACK, M.J.

---

## CLASS ACTION COMPLAINT

### *Introduction*

1. Plaintiff Arlene Berkowitz seeks redress for the illegal practices of Frederick J. Hanna & Associates, P.C. in which they unlawfully engaged in the collection of consumer debts in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

2. Plaintiff is a citizen of the State of New York who resides within this District.

3. Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA.

4. The alleged debt that Defendant sought to collect from the Plaintiff involves a consumer debt.

5. Upon information and belief, Defendant's principal place of business is located within the state of Marietta, Georgia.

6. Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

-1-

7.     Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. §
       1692(a)(6).

### Jurisdiction and Venue

8.     This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. §
       1331.

9.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and
       transactions that give rise to this action occurred, in substantial part, within this district.

### Allegations Particular to Arlene Berkowitz

10.    Upon information and belief, on a date better known by Defendant, Defendant began to
       attempt to collect an alleged consumer debt from the Plaintiff.

11.    On or about March 9, 2012 Defendant sent collection letters communicating to the least
       sophisticated consumer that the communication came from a law firm in a practical sense
       violating Section 1692e(3).

12.    The FDCPA prohibits the use of any "false, deceptive, or misleading representation or
       means in connection with the collection of any debt." 15 U.S.C. § 1692e. It enumerates a
       non-exhaustive list of sixteen debt-collection practices that run afoul of this proscription,
       including "the false representation or implication that [a] communication is from an
       attorney." Id. § 1692e(3).

       The Second circuit has held that a debt-collection letter from a law firm or lawyer
       violates Section 1692e(3) if an attorney was not "directly and personally involved" with
       the debtor's account — such as by reviewing the debtor's file — before the letter was
       sent. Clomon v. Jackson., 988 F.2d 1314, 1320-21 (2d Cir. 1993) See Also. Suquilanda v.
       Cohen & Slamowitz LLP ., No. 1:10-cv-05868 (S.D.N.Y. SEP 08, 2011) ( "Absent any

disclaimer and without an attorney conducting any meaningful review ,Using a "Law

Office" Letterhead States a Claim for Relief under Section 1692e(3)"

13.     The Second Circuit confronted similar facts in Clomon. There, the attorney Defendant

approved the form of dunning letters sent by a collection agency and also "approved the

procedures according to which the letters were sent.". He did not have any specific

involvement with each debtor's account, however, such as reviewing the debtor's file or

the particular letter being mailed. Id. The Second Circuit concluded that the challenged

letters, despite bearing the Defendant attorney's signature, violated Section 1692e(3)

because, although literally "from" an attorney, they "were not `from' him in any

meaningful sense of that word." . The same result is obtained here.

14.     Although Frederick J. Hanna & Associates, P.C. may technically be a law firm, it was not

acting in the capacity of a law firm with respect to the said letters. The inclusion of "Law

Offices" is therefore materially deceptive and misleading in that it communicates to the

least sophisticated consumer that the communication came from a law firm in a practical

sense, when it did not.

15.     If Frederick J. Hanna & Associates, P.C. desires to take advantage of the additional

collection leverage provided by the use of a law firm's name in connection with purely

debt-collection related activities, it is free to do so under the law of the Second Circuit so

long as its each and every one of its standardized communications including letters and

voice mail messages do not give the least sophisticated consumer the impression that the

communications are from an attorney or law firm in the practical sense. See e.g. Clomon

v Jackson, 988 F2d 1314, 1320 (2d Cir. 1993). See e.g Gonzalez v. Kay, 577 F.3d 600

(5th Cir. 2009). "Debt collectors acting solely as debt collectors must not send the

-3-

message that a lawyer is involved, because this deceptively sends the message that the 'price of poker has gone up.' See also. <u>Sparkman v. Zwicker & Assocs., P.C.</u>, 374 F. Supp. 2d 293 (E.D.N.Y.2005). The court found that the collector's letter with text on the front and back regarding attorney involvement was confusing to the least sophisticated consumer and violated § 1692e. See, e.g <u>Suquilanda v. Cohen & Slamowitz, LLP</u> No. 1:10-cv-05868 (S.D.N.Y. SEP 08, 2011) " Absent any disclaimer and without an attorney conducting any meaningful review ,Using a "Law Office" Letterhead States a Claim for Relief under Section 1692e(3)".

16.  On or about March 9, 2012, Defendant printed and mailed, or caused to be printed and mailed, a letter to Plaintiff in an effort to collect from Plaintiff an obligation, or alleged obligation, owed or due, or asserted to be owed or due an original creditor other than Defendants and which Defendants acquired after such obligation or alleged obligation was charged-off or was in default.  A true and correct copy of Defendant's communication is attached hereto.

17.  Defendant, as a matter of pattern and practice, mail letters, or cause the mailing of letters, to debtors using language substantially similar or materially identical to that utilized by Defendant in mailing the above-cited letter to Plaintiff.

18.  Defendant mails, or causes the mailing of, thousands of collection letters like the one sent Plaintiff without conducting any meaningful review of the accounts.

19.  The letters the Defendant mails, or causes to be mailed, are produced by Defendant's concerted efforts and integrated or shared technologies including computer programs, mailing houses, and electronic databases.

20.  The said letter is a standardized form letter.

-4-

21. Said March 9th letter also states in pertinent part as follows: "Our office has tried repeatedly to contact you regarding the above referenced debt. We either were unable to reach you or you were unable to make any kind of satisfactory arrangement to resolve this matter. We are making a further attempt to allow you to bring this matter to a resolution through either a mutually agreeable settlement or payment arrangement that would suit your present budget".

22. Said language and letterhead implies that Attorney Frederick J. Hanna, the principle of the Defendant law firm is personally involved in collecting the debt.

23. Said letter implies that Attorney Hanna is personally involved in presenting the Plaintiff with the settlement amount.

24. The Defendant sent the said letter to the plaintiff which was mass produced and computer generated allegedly from Defendant.

25. That a mass-produced computer generated letter bearing no signature was forwarded to the Plaintiff.

26. Upon information and belief, that said letter was a mass-produced, computer generated letter, and was designed to give the impression that said letter was forwarded by an attorney when said letter was not personally reviewed by an attorney.

27. That upon information and belief neither defendant nor any attorney admitted to practice law reviewed the Plaintiff's alleged delinquent account prior to the date of the letter at issue.

28. The said letter is violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692e(3) by making the false representation that the communication is from an attorney and 1692e(10) that Attorney Hanna is personally involved in collecting the debt when he

-5-

is not. The defendant was found liable for this type of practice in <u>Cordes v. Hanna</u> (see attached hereto).

## AS AND FOR A FIRST CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of herself and the members of a class, as against the Defendant.*

29. Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through twenty four (24) as if set forth fully in this cause of action.

30. This cause of action is brought on behalf of Plaintiff and the members of a class.

31. The class consists of all persons whom Defendant's records reflect resided in the State of New York and who received collection letters from Defendant's representatives within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) the collection letter(s) was sent to a consumer seeking payment of a consumer debt; and (c) that the collection letter(s) used an attorney letter head which represented that the letter was sent from a law firm in a practical sense (d) that the Attorney is personally involved in collecting the debt when he is not (e) the letter was sent concerning the seeking payment of an alleged debt and was not returned or undelivered by the post office; and (e) that the message contained violations of 15 U.S.C. §§ 1692e, 1692e(3), 1692e(10).

32. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    (a) Based on the fact that form collection letters are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

    (b) There are questions of law and fact common to the class and these questions

-6-

predominate over any question(s) affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

(c)     The only individual issue involves the identification of the consumers who received such collection letters (*i.e.* the class members). This is purely a matter capable of ministerial determination from the records of the Defendant.

(d)     The claims of the Plaintiff are typical of those of the class members. All of the respective class claims are based on substantially similar facts and legal theories.

(e)     The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

33.     A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

34.     If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

35.   Collection letters, such as those sent by the Defendant are to be evaluated by the

objective standard of the hypothetical "least sophisticated consumer."

### Violations of the Fair Debt Collection Practices Act

36.   The Defendant's actions as set forth above in the within complaint violates the Fair Debt

Collection Practices Act.

37.   Because the Defendant violated of the Fair Debt Collection Practices Act, the Plaintiff

and the members of the class are entitled to damages in accordance with the Fair Debt

Collection Practices Act.

**WHEREFORE,** Plaintiff, respectfully requests that this Court enter judgment in Plaintiff's favor
and against the Defendant and award damages as follows:

(a)   Statutory and actual damages provided under the FDCPA, 15 U.S.C. 1692(k); and

(b)   Attorney fees, litigation expenses and costs incurred in bringing this action; and

(c)   Any other relief that this Court deems appropriate and just under the
circumstances.

Dated: Brooklyn, New York
       May 10, 2012

Hashim Rahman, Esq.
Maxim Maximov, Esq.
Maxim Maximov & Associates
**Attorney for the Plaintiff**
1600 Avenue M, 2nd Floor
Brooklyn, NY 11230
Office: (718) 395-3459
Facsimile: (718) 408-9570
E-mail: mmaximov@mmaximov.com

Plaintiff requests trial by jury on all issues so triable.

Hashim Rahman, Esq.
Maxim Maximov, Esq

-8-

# FREDERICK J. HANNA & ASSOCIATES, P.C.

## *Attorneys at Law*

FREDERICK J. HANNA
DENNIS F. HENRY
JAMES T. FREANEY
LOUIS R. FEINGOLD
MICHAEL S. PESKIN
ROBERT A. WINTER

**1427 ROSWELL ROAD**
**MARIETTA, GA 30062**
FAX:        (770) 980-0528
TOLL FREE:  (866) 811-1159

JOSEPH C. COOLING
SCOT W. CROGHAN
CLAYTON D. MOSELEY
S. LOUIS SCHIAPPA
DANIEL A. GREENE

March 9, 2012

ARLENE BERKOWITZ
278 WALLABOUT ST APT 1A
BROOKLYN NY 11206-4923

Re:    FIA CARD SERVICES, N.A.

Reference: 374631999244114
Balance: $3,698.28
File No: B0029503

Dear ARLENE BERKOWITZ:

Our office has tried repeatedly to contact you regarding the above referenced debt. We either were unable to reach you or you were unable to make any kind of satisfactory arrangement to resolve this matter. We are making a further attempt to allow you to bring this matter to a resolution through either a mutually agreeable settlement or payment arrangement that would suit your present budget.

Please contact us immediately at 1-866/811-1159 so that we may help you clear your obligation with our client.

Sincerely,

Frederick J. Hanna & Associates, P.C.

HOURS OF OPERATION ARE: MONDAY-THURSDAY 8AM-9PM EST,
FRIDAY 8AM-5PM EST, AND SATURDAY 9AM-1PM EST
This is an attempt to collect a debt. Any information obtained will be used for that purpose.

" THIS IS A COMMUNICATION FROM A DEBT COLLECTOR "

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Jacquelyn Cordes,

                              Plaintiff,              Civ. No. 10-1344  (RHK/TNL)
v.                                                    **MEMORANDUM OPINION
                                                      AND ORDER**

Frederick J. Hanna & Associates, P.C.,

                              Defendant.

---

Trista M. Roy, Consumer Justice Center, P.A., Vadnais Heights, Minnesota, for Plaintiff.

Thomas P. Kane, Paulette S. Sarp, Nadia B. Hasan, Hinshaw & Culbertson LLP, Minneapolis, Minnesota, for Defendant.

---

### INTRODUCTION

Plaintiff Jacquelyn Cordes ("Cordes") alleges in this action that Defendant Frederick J. Hanna & Associates, P.C. ("Hanna") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by (1) leaving multiple messages on her home voicemail that were overheard by others and (2) sending her a letter suggesting that an attorney had reviewed her account, when there had been no such review. Presently before the Court is Cordes's Motion for Partial Summary Judgment as to Hanna's liability.  For the reasons set forth below, the Court will grant her Motion.

## BACKGROUND

The pertinent facts are undisputed. At all relevant times, Cordes lived with her boyfriend, David Pitsch, and a friend, Jessica Joiner. The three shared voicemail on their home telephone number.

Prior to December 2009, Cordes incurred credit-card debt with Chase Bank ("Chase"). After her account became past-due, Chase transferred it to Hanna, a law firm, for collection. Between December 3, 2009, and January 20, 2010, Hanna left seven messages for Cordes on her home voicemail, identifying itself as a debt collector; some were heard by Pitsch and Joiner.

Hanna later sent Cordes a letter, dated February 9, 2010, on letterhead indicating it was from "FREDERICK J. HANNA & ASSOCIATES, P.C., Attorneys at Law." The letter provided:

> I had previously written you regarding your debt obligation placed with my office for collection. I had hoped that you would have satisfied this matter to avoid any additional collection activity.
>
> In order to resolve the account, our client is offering to settle this debt. The settlement offer is for $1,692.27, or 40% of the above unpaid balance. It must be received in our office within fifteen days from the date of this letter. Upon receipt, my client will be notified of the funds received, and they will mark the account settled. Our client makes no representation about tax consequences this may have or any reporting requirements that may be imposed on them. You should consult independent tax counsel of your own choosing if you desire advice about any tax consequences which may result from this settlement.
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose.

- 2 -

The letter was signed by "Frederick J. Hanna & Associates, P.C." rather than any individual attorney. Frederick J. Hanna, Hanna's principal, has acknowledged that this was a "form" letter, generated automatically "absent a certain code being added to a file" (which did not occur here). He has also acknowledged that none of Hanna's twelve attorneys reviewed Cordes's file before the letter was sent.

Cordes commenced this action in April 2010, asserting two claims against Hanna under the FDCPA: (1) the voicemails constituted prohibited communications with third parties, in violation of 15 U.S.C. § 1692c(b), and (2) the February 9, 2010 letter misleadingly implied that an attorney had reviewed her account when no such review had occurred, in violation of 15 U.S.C. § 1692e(3). She now moves for partial summary judgment as to Hanna's liability on these claims.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible

- 3 -

evidence that specific facts exist creating a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

## ANALYSIS

### I.    The FDCPA generally

Congress enacted the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a). It is intended "to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 318-319 (8th Cir. 2004). As this Court has previously noted, the FDCPA is a "broad remedial statute that imposes strict liability on debt collectors; its terms are to be applied 'in a liberal manner.'" Owens v. Hellmuth & Johnson, PLLC, 550 F. Supp. 2d 1060, 1063 (D. Minn. 2008) (Kyle, J.) (quoting Picht v. Hawks, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) (Noel, M.J.), aff'd, 236 F.3d 446 (8th Cir. 2001)). With these precepts in mind, the Court turns to Cordes's specific allegations.

### II.   Section 1692c(b)

In her first claim, Cordes asserts that Hanna's voicemails violated 15 U.S.C. § 1692c(b). That portion of the FDCPA provides, in pertinent part:

> [W]ithout the prior consent of the consumer given directly to the debt collector . . .[,] a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

- 4 -

Cordes argues that when Pitsch and Joiner heard the voicemails, Hanna's liability under

this provision was triggered because it had "communicated" with a third party "in

connection with the collection of" her debt. (Pl. Mem. at 7-8.) In response, while not

disputing leaving the voicemails, Hanna argues that it cannot be liable because it did not

*intentionally* communicate with Pitsch and Joiner; they simply heard voicemail messages

it had left for Cordes. (Def. Mem. at 8-14.)

In support of its argument, Hanna points to two decisions from this Court, Baker

v. Allstate Financial Services, Inc., 554 F. Supp. 2d 945, 950 (D. Minn. 2008) (Ericksen,

J., adopting Report & Recommendation of Graham, M.J.), and Mark v. J.C. Christensen

& Associates, Inc., Civ. No. 09-100, 2009 WL 2407700 (D. Minn. Aug. 4, 2009)

(Montgomery, J.). Both cases are inapposite, as neither arose under Section 1692c(b).

Baker analyzed a claim under a different section of the FDCPA, 15 U.S.C. § 1692d(6),

which prohibits debt-collection telephone calls without meaningful disclosure of the

caller's identity. Mark addressed that same section of the FDCPA, in connection with the

defendant's claim that it was an unconstitutional restraint on commercial speech in

violation of the First Amendment. In passing, both Baker and Mark suggested that

unintentional disclosures to third parties would not support a claim under Section

1692c(b). See Baker, 554 F. Supp. 2d at 950; Mark, 2009 WL 2407700, at *5. But in

neither case was this Court expressly called upon to determine whether an unintentional

disclosure to a third party triggers liability under this section.

- 5 -

However, another decision from this Court, which was decided little more than one month ago, directly answered this question. In <u>Zortman v. J.C. Christensen & Associates, Inc.</u>, Civ. No. 10-3086, 2011 WL 1630935 (D. Minn. Apr. 29, 2011) (Ericksen, J.), the debt-collector defendant left several voicemail messages for the plaintiff on her home and cellular phones, which were overheard by her children. The plaintiff claimed that the messages violated Section 1692c(b), and the defendant responded that it could not be held liable because it did not "purposefully or deliberately disclose . . . information to a third party." <u>Id.</u> at *1. The Court rejected this argument.

<u>Zortman</u> offered several persuasive reasons why the defendant's argument did not hold water. It noted that Section 1692c(b), on its face, contains no scienter requirement, unlike other portions of the FDCPA. <u>Id.</u> at *5 ("Where Congress wanted to include an intent element as part of an FDCPA violation, it has done so explicitly."). It also recognized that the FDCPA is a strict-liability statute, "which conflicts with requiring deliberate or purposeful intent." <u>Id.</u>; accord, e.g., <u>Lovelace v. Stephens & Michaels Assocs., Inc.</u>, No. 07-10956, 2007 WL 3333019, at *3 (E.D. Mich. Nov. 9, 2007) ("The FDCPA, including § 1692c(b), is a strict liability statute and therefore does not require a showing of intentional conduct on the part of a debt collector to give rise to liability."). In addition, <u>Zortman</u> pointed out that the term "communicate" does not focus on the intended recipient, but rather turns on whether the speaker "shares with or conveys information to another" – "for example, one may communicate with an unintended audience." 2011 WL 1630935, at *5; <u>see also</u> 15 U.S.C. § 1692a(2) (defining "communication" as "the conveying of information regarding a debt directly *or indirectly*

- 6 -

to any person through any medium") (emphasis added).[1]  Finally, <u>Zortman</u> recognized

that the FDCPA's "bona fide error defense"[2] was inconsistent with a requirement that a

debt collector purposefully or intentionally communicate with a third party in order to be

held liable.  2011 WL 1630935, at *5.

Several other district courts have reached the same conclusion as <u>Zortman</u>.  <u>See,</u>

<u>e.g.</u>, <u>Leahey v. Franklin Collection Serv., Inc.</u>, 756 F. Supp. 2d 1322, 1327 (N.D. Ala.

2010); <u>Berg v. Merchs. Ass'n Collection Div.</u>, 586 F. Supp. 2d 1336, 1341 (S.D. Fla.

2008); <u>FTC v. Check Enforcement</u>, No. Civ. A. 03-2115, 2005 WL 1677480, at *8

(D.N.J. July 18, 2005).  The undersigned fully agrees with the reasoning in these cases

(and <u>Zortman</u>) and will follow them here.  Accordingly, the Court rejects Hanna's

argument that it cannot be liable here absent intentional or deliberate disclosure to Pitsch

and Joiner.  And because Hanna raises no other argument to avoid liability, and because

---

[1] Pointing to legislative history, Hanna argues that Congress intended the word "communicate" to mean "contact."  (Mem. in Opp'n at 10.)  But the FDCPA expressly defines the term "communication," <u>see</u> 15 U.S.C. § 1692a(2), and the Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."  Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).  In any event, the Court perceives no material difference between the word "communicate" and the word "contact."  <u>See</u> The American Heritage Dictionary 315 (2d coll. ed. 1985) (defining "contact" as "[t]he state of being in communication").

[2] The "bona fide error defense" offers debt collectors "a narrow exception to the strict liability imposed by the FDCPA."  <u>Zortman</u>, 2011 WL 1630935, at *5.  It provides that a debt collector may escape liability "if [it] shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  As <u>Zortman</u> observed, "[i]f violations of the FDCPA required deliberate or purposeful intent, then the bona fide error defense's 'not intentional' element would tend toward surplusage."  2011 WL 1630935, at *5.  Notably, Hanna has expressly disavowed relying upon the bona fide error defense in this case (<u>see</u> Hanna Dep. at 50-51), and in any event did not assert the defense in its Answer.  <u>See</u> Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 498 (8th Cir. 2010) (noting that affirmative defense not raised in answer is generally forfeited).

there is no dispute that Pitsch and Joiner heard at least some of the messages Hanna left

for Cordes, the Court determines that she is entitled to judgment in her favor as to

Hanna's liability under Section 1692c(b).

## III.    Section 1692e(3)

The FDCPA prohibits the use of any "false, deceptive, or misleading

representation or means in connection with the collection of any debt." 15 U.S.C.

§ 1692e. It enumerates a non-exhaustive list of sixteen debt-collection practices that run

afoul of this proscription, including "the false representation or implication that [a]

communication is from an attorney." Id. § 1692e(3).  A substantial number of courts

have held that a debt-collection letter from a law firm or lawyer violates Section 1692e(3)

if an attorney was not "directly and personally involved" with the debtor's account – such

as by reviewing the debtor's file – before the letter was sent.  See, e..g, Taylor v. Perrin,

Landry, deLaunay & Durand, 103 F.3d 1232, 1237-38 (5th Cir. 1997); Avila v. Rubin, 84

F.3d 222, 229 (7th Cir. 1996); Clomon v. Jackson, 988 F.2d 1314, 1320-21 (2d Cir.

1993); Martsolf v. JBC Legal Grp., P.C., No. 1:04-CV-1346, 2008 WL 275719, at *7

(M.D. Pa. Jan. 30, 2008); Sonmore v. Checkrite Recovery Servs., Inc., 187 F. Supp. 2d

1128, 1133 (D. Minn. 2001) (Alsop, J.); but see Danielson v. Hicks, Civ. No. 3-94-1053,

1995 WL 767290 (D. Minn. Oct. 26, 1995) (Davis, J.).[3]  This is because letters on law-

firm letterhead imply meaningful attorney involvement, which does not exist absent

participation by an attorney in the debt-collection process. See, e.g., Greco v. Trauner,

---

[3] Hanna acknowledges the conflict between Danielson and Sonmore and urges the Court to
follow the former case. (See Mem. in Opp'n at 16 n.5.) The Court declines to do so in light of,
in its view, the better-reasoned cases to the contrary, as referenced above.

Cohen & Thomas, L.L.P., 412 F.3d 360, 364 (2d Cir. 2005) ("[W]e [have] established

that a letter sent on law firm letterhead . . . does represent a level of attorney involvement

to the debtor receiving the letter. And if the attorney or firm had not, in fact, engaged in

that implied level of involvement, the letter is . . . misleading within the meaning of the

FDCPA.").[4]

Cordes asserts that the letter she received from Hanna violated Section 1692e(3)

because it falsely implied that one of its attorneys had performed a meaningful review of

her account before sending the letter, when in fact no such review had occurred. Hanna

acknowledges that no attorney personally reviewed Cordes's file or the letter

"automatically" sent to her before it was mailed. (Hanna Dep. at 45-48.) It also

acknowledges that the letter was a "form letter." (Id.) Nevertheless, it contends that the

letter did not violate Section 1692e(3) because its "form" contents were created by an

attorney (Frederick J. Hanna) and it was sent pursuant to his standing instructions.

(Mem. in Opp'n at 14.) This, however, does not constitute meaningful attorney

involvement.

---

[4] This is not to say that a law firm can *never* send a debt-collection letter without an attorney's
meaningful involvement in the collection process, but it may do so only if it "includes
*disclaimers* that . . . make clear . . . that the law firm or attorney sending the letter is not, at the
time of the letter's transmission, acting as an attorney." Greco, 412 F.3d at 364 (emphasis in
original). Indeed, in another case brought against Hanna, the letter in question was on the same
letterhead as the letter to Cordes here but also contained the disclaimer, "[a]t this time, no
attorney with this firm has personally reviewed the particular circumstances of your account."
Walsh v. Frederick J. Hanna & Assocs., P.C., No. 2:10-cv-02720, 2010 WL 5394624, at *2 (E.D.
Cal. Dec. 21, 2010). Walsh found no violation of the FDCPA because, in light of the disclaimer,
the letter could not, and did not, falsely or misleadingly imply meaningful attorney involvement.
Id. at *3. No similar disclaimer is found in the letter here.

The Second Circuit confronted similar facts in <u>Clomon</u>. There, the attorney

defendant approved the form of dunning letters[5] sent by a collection agency and also

"approved the procedures according to which th[e] letters were sent." 988 F.2d at 1317.

He did not have any specific involvement with each debtor's account, however, such as

reviewing the debtor's file or the particular letter being mailed. <u>Id.</u> The Second Circuit

concluded that the challenged letters, despite bearing the defendant attorney's signature,

violated Section 1692e(3) because, although *literally* "from" an attorney, they "were not

'from' [him] in any meaningful sense of that word." <u>Id.</u> at 1320; <u>accord, e.g.</u>, <u>Avila</u>, 84

F.3d at 229. The same result should obtain here.[6]

Pointing to <u>Mizrahi v. Network Recovery Services, Inc.</u>, No. 98-CV-4528, 1999

WL 33127737 (E.D.N.Y. Nov. 5, 1999), Hanna argues that it is lawful for a law-firm

staff member to send a debt-collection letter on the firm's letterhead. (Mem. in Opp'n at

15-17.) But <u>Mizrahi</u> involved facts dissimilar to the case at bar. Indeed, the evidence

there showed that an attorney performed an initial review of every file she received,

which lasted between two and four hours. 1999 WL 33127737, at *2. As a result, it was

---

[5] "'Dun' means to demand payment from a delinquent debtor. Debt-collection letters, therefore, are frequently referred to as 'dunning letters.'" <u>Owens</u>, 550 F. Supp. 2d at 1063 n.1 (internal citation omitted).

[6] Hanna argues that <u>Clomon</u> is distinguishable because the letters there bore the signature of a *specific* attorney, whereas the letter here is signed "Frederick J. Hanna & Associates, P.C." (See Mem. in Opp'n at 14-15.) This is a distinction without a difference. Just as a "letter from an attorney implies that a real lawyer, acting like a lawyer usually acts, directly controlled or supervised the process through which the letter was sent," a dunning letter "on an attorney's letterhead conveys" the same message. <u>Avila</u>, 84 F.3d at 229. This is particularly true given that dunning letters are reviewed for unlawfulness using an "unsophisticated-consumer" standard. <u>E.g.</u>, <u>Duffy v. Landberg</u>, 215 F.3d 871, 873 (8th Cir. 2000). Accepting Hanna's argument would mean that a lawyer could easily skirt the FDCPA simply by placing his law firm's name at the bottom of a dunning letter rather than his own.

clear that "the involvement of the defendant [attorney] in the [debt-collection] process [was] both personal and substantial." Id. at *4. No similar facts exist here.

The Court concludes that Hanna's letter violated Section 1692e(3) under the undisputed facts of this case.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Cordes's Motion for Partial Summary Judgment (Doc. No. 18) is **GRANTED**. As a result, only the issue of Cordes's damages remains for trial.[7]

Dated: June 7, 2011                          s/Richard H. Kyle
                                             RICHARD H. KYLE
                                             United States District Judge

---

[7] The Court reminds the parties that this case is on the September 2011 trial calendar. The parties should be fully prepared to try this matter by September 1, 2011.

- 11 -